The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Bost and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and employer-defendant.
3. The PMA Group was the carrier on the risk for employer-defendant.
4. Plaintiff sustained an injury by accident arising out of and in the course of her employment, on November 5, 1991.
5. Plaintiff's average weekly wage on November 5, 1991 was seven hundred twenty and 00/100 dollars ($720.00).
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner with minor modifications as follows:
FINDINGS OF FADO
1. On November 5, 1991, plaintiff sustained an injury by accident arising out of and in the course of her employment with employer-defendant, resulting in an injury to her back. Defendants accepted liability for plaintiff's claim through a Form 21 Agreement, approved by the Industrial Commission on December 19, 1991.
2. Following execution of the Form 21 Agreement, disputes arose between the parties as to whether the plaintiff continued to be disabled. Defendants submitted five separate Form 24 Applications in an effort to stop payment of compensation. On October 29, 1993, defendants filed a Form 33 requesting a hearing on the grounds that plaintiff was capable of returning to gainful employment or participating in job search activities, but that she had refused to do so.
3. At that time plaintiff was represented by Charles O. Peed, a licensed North Carolina attorney practicing in Winston-Salem since 1972, whose practice is devoted solely to representation of employees in workers' compensation claims and injured parties in personal injury and medical malpractice actions.
4. A hearing was scheduled before former Deputy Commissioner Gregory Willis on February 21, 1994. Because of the upcoming hearing, Mr. Peed perceived a substantial threat that plaintiff's benefits would be terminated due to her noncompliance with medical and vocational rehabilitation efforts. Mr. Peed, therefore, obtained settlement authority from plaintiff and began settlement discussions with counsel for defendants.
5. At the hearing before Deputy Commissioner Bost, plaintiff testified that she went to the hearing scheduled for February 21, 1994, and Mr. Peed told plaintiff that she should go home and that if she stayed at the hearing she would "mess things up."
6. On or about February 16, 1994, Mr. Peed spoke with the defendants' attorney and negotiated a full and final settlement of plaintiff's workers' compensation claim in the amount of sixty thousand and 00/100 dollars ($60,000.00). Defense counsel proceeded to draft a proposed compromise settlement agreement, which was forwarded to Mr. Peed on February 17, 1994.
7. Plaintiff testified at the hearing before Deputy Commissioner Bost that she did not want to settle her claim for the $60,000.00 amount negotiated by her attorney, Charles O. Peed.
8. Upon receipt of the proposed settlement agreement, Mr. Peed called plaintiff and asked her to come to his office in order to review and execute the document. Once in Mr. Peed's office, plaintiff had at least two hours available to review the settlement documents in a conference room.
9. Plaintiff testified that once the settlement agreement was presented to her at Mr. Peed's office, she was not given the adequate time to completely review the settlement agreement in its entirety. The settlement agreement was continually pulled away from plaintiff by Mr. Peed and his staff in order to make changes in the settlement agreement.
10. According to Mr. Peed, he reviewed the settlement agreement with plaintiff and fully explained its terms and consequences. Plaintiff carefully read the settlement agreement and even requested two separate modifications. The first modification was of social security offset language. For the second revision, plaintiff requested that the following language be removed from the settlement agreement: ". . . and by these presents, for herself, her heirs, next of kin and personal representatives, does hereby remise, release, and forever discharge . . ." Both of the aforementioned revisions were made solely at the request of plaintiff following her review of the settlement agreement.
11. There is no dispute that plaintiff signed the Agreement for Final Compromise Settlement and Release dated February 16, 1994. Both plaintiff and Mr. Peed's signatures were witnessed by Regina Booth, Mr. Peed's former legal secretary.
12. Ms. Booth recalled that plaintiff spent at least two hours reviewing the settlement agreement before it was signed, and that during this period of time, all of plaintiff's questions were answered by Mr. Peed. Ms. Booth did not hear plaintiff complain about the settlement terms or state that she did not understand the implications of settlement. Ms. Booth testified that Mr. Peed did not place any undue influence on plaintiff in an effort to have her sign the agreement.
13. Plaintiff's testimony reveals that her claim of undue influence is directed solely against her former counsel, Charles Peed.
14. The Agreement for Final Compromise Settlement and Release dated February 16, 1994, was approved in an Order filed by former Deputy Commissioner Willis on March 2, 1994.
15. The Agreement for Final Compromise Settlement and Release was not procured by the fraud, misrepresentation, or undue influence of the defendants or any of their representatives nor was it procured under undue influence by attorney Peed. The settlement was not based on a mutual mistake involving either of the defendants or their representatives.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. In requesting that the Industrial Commission set aside the Agreement for Final Compromise Settlement and Release dated February 16, 1994, plaintiff has the burden of proving, by the greater weight of the evidence, that there has been error due to fraud, misrepresentation, undue influence, or mutual mistake. A settlement agreement may be overturned only in cases where there is evidence that it was obtained by fraud, misrepresentation, mutual mistake, or undue influence. N.C. Gen. Stat. § 97-17.
2. To show error which would warrant setting aside a settlement agreement, plaintiff must show that defendants, or some representative of defendants, engaged in fraud, misrepresentation, or undue influence, or that both parties were under a mutual mistake. It is not sufficient that a party to an executed settlement agreement prove that undue influence asserted by her attorney forced a settlement. Before the Industrial Commission may set aside a settlement agreement, an employee must prove that defendants acted inappropriately in procuring the settlement through fraud, misrepresentation, or undue influence. Plaintiff presented no evidence in this regard. N.C. Gen. Stat. § 97-17.
3. Plaintiff also failed to prove, by the greater weight of the evidence, that she was unduly influenced by her attorney, Charles Peed, when she executed the Agreement for Final Compromise Settlement and Release. N.C. Gen. Stat. § 97-17.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
Plaintiff's claim to set aside the Agreement for Final Compromise Settlement and Release dated February 16, 1994, is hereby DENIED.
This the ___ day of November 1997.
 S/ _______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________________ THOMAS J. BOLCH COMMISSIONER
LKM/bjp